UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NETGEAR, INC. <br><br> Plaintiff, <br><br> v. <br><br> NETGR ROUTER, WAVLINK SUPPORT, WIFIEXT LLC a/k/a MYWIFIEXTNET, MYWIFIEXT, and WIFI EXT, MYWIFINETWORK, WEB ENCHANTERS, NET GEAR, NETGENIE, WIFI SUPPORT, SECURITYUPDATE, EXTENDER SUPPORT, NETGENIEEXT, GEEKZ SOLUTIONS, ROUTER TECH, AND JOHN DOES 1-5 <br><br> Defendants. | Case No.: 1:24-cv-12071-IT <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff NETGEAR, Inc. ("NETGEAR" or "Plaintiff") by and through its undersigned counsel, complains of defendants NETGR Router's ("NETGR"), Wavlink Support's, WifiExt LLC's a/k/a MyWifiExtNet, MyWifiExt, and WifiExt, MyWifiNetwork's, Web Enchanters's, Net Gear's, NetGenie's, Wifi Support's, SecurityUpdate's, Extender Support's, NetGenieExt's, Geekz Solutions's, Router Tech's, and John Does' 1-5 (collectively, "Defendants") conduct and alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1. NETGEAR seeks injunctive relief and monetary damages for Defendants' trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and violations of state law arising from Defendants' improper use of NETGEAR's trademarks through online commerce sites for the purposes of unfair and deceptive business practices.

322273273.1

2. Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of NETGEAR. As a result of Defendants' actions, NETGEAR is suffering a loss of the enormous goodwill that NETGEAR has created in its trademarks and is losing profits from lost sales of products.

3. This action seeks permanent injunctive relief and damages for Defendants' infringement of NETGEAR's intellectual property rights.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

5. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have misrepresented the nature of products to residents of the State of Massachusetts and this District; because Defendants have caused injury to NETGEAR's trademarks in the State of Massachusetts and this District; because Defendants practice the unlawful conduct complained of herein, in part, within the State of Massachusetts and this District; because Defendants regularly conduct or solicit business within the State of Massachusetts and this District; because Defendants regularly and systematically direct electronic activity into the State of Massachusetts and this District with the manifest intent of engaging in business within the State of Massachusetts and this District, including the sale and/or offer for sale of products to Internet users within the State of Massachusetts and this District..

6. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

**PARTIES**

7. Plaintiff NETGEAR is a Delaware corporation with its principal place of business in San Jose, California. NETGEAR is a computer networking company that produces networking hardware for consumers, businesses, and service providers (the "NETGEAR Products"). NETGEAR turns ideas into innovative networking products that connect people, power businesses, and advance the way we live.

8. Defendant NETGR is an entity who, upon information and belief, operates the websites routersetupforyou.com, routeruniverse.com, and routerappsetup.com, as well as the email addresses support@netgrouter.support, humawebenterprises@gmail.com, parvejwebservices@gmail.com, karanwebenterprises@gmail.com, saunoowebservices@gmail.com, prateekwebenterprises@gmail.com, mahaveerwebservices@gmail.com, netgearwebworld@gmail.com, and deepalenterprisesweb@gmail.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.

9. Defendants Wavlink Support, WifiExt LLC a/k/a MyWifiExtNet, MyWifiExt, and WifiExt, MyWifiNetwork, Web Enchanters, Net Gear, NetGenie, Wifi Support, SecurityUpdate, Extender Support, NetGenieExt are entities who, upon information and belief, operate in concert by utilizing the email addresses support@mywifiextension.net and netgenienetwork@outlook.com and the websites my-wifi-extnet.us, mywifiexxtnet.us, mywifiextelp.net, mywifiextsetup.us, myeifiext-ext.net, and mywifiexte.xyz for the purpose of

3

promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.

10. Defendant Geekz Solutions is an entity who, upon information and belief, operates the email addresses contractgeekzonline@gmail.com and foods247@gmail.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.

11. Defendant Router Tech is an entity who, upon information and belief, operates the website routerhelps.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.

12. John Does 1-5 are individuals or entities yet to be identified who are described in the Complaint as operating websites for the purposes of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.

## FACTS

A. **NETGEAR's Trademark Usage**

13. The U.S. Patent and Trademark Office ("USPTO") has issued Reg. No. 2,124,219 and 5,760,720 for use of the NETGEAR mark on, *inter alia*, "computer network interconnection hardware, namely, routers, bridges, hubs, and switches…" (hereinafter, the "NETGEAR Marks").

14. The NETGEAR Marks have been in continuous use since at least 1996. Said registrations are in full force and effect, and the NETGEAR Marks are incontestable pursuant to 15 U.S.C. § 1065.

15. NETGEAR advertises, distributes, and sells its products to consumers under the NETGEAR Marks.

16. NETGEAR has also acquired common law rights in the use of the NETGEAR Marks throughout the United States.

17. NETGEAR's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of NETGEAR's exclusive ownership of the NETGEAR Marks.

18. NETGEAR has invested significant time, money, and effort in advertising, promoting, and developing the NETGEAR Marks throughout the United States and the world. As a result of such actions, NETGEAR has established substantial goodwill and widespread recognition in its NETGEAR Marks, and the Marks have become associated exclusively with NETGEAR and its products by both customers and potential customers, as well as the general public at large.

19. To create and maintain such goodwill among its customers, NETGEAR has taken substantial steps to ensure that products bearing the NETGEAR Marks are of the highest quality. As a result, the NETGEAR Marks have become widely known and are recognized throughout the United States and the world as a symbol of high quality products.

**B. Defendants' Infringing and Improper Conduct**

20. Defendants operate the websites, including, but not limited to, routersetupforyou.com, routeruniverse.com, routerhelps.com, and routerappsetup.com (collectively, the "Websites") to deceive customers into believing they are authorized to sell NETGEAR products and offer NETGEAR services. The Defendants go so far as to impersonate NETGEAR customer support agents using various email addresses such as

support@netgrouter.support, humawebenterprises@gmail.com, parvejwebservices@gmail.com, karanwebenterprises@gmail.com, saunoowebservices@gmail.com, prateekwebenterprises@gmail.com, mahaveerwebservices@gmail.com, netgearwebworld@gmail.com, deepalenterprisesweb@gmail.com, support@mywifiextension.net, netgenienetwork@outlook.com, contractgeekzonline@gmail.com, and foods247@gmail.com to mislead customers into believing they are NETGEAR representatives, when they are not. Defendants then convince the unknowing customers that they must purchase additional "NETGEAR" products and services from Defendants.

21. Defendants also use the NETGEAR Marks on their Websites in furtherance of their scheme to con unknowing customers.

22. Upon information and belief, Defendants divert customers looking for NETGEAR products and support services from NETGEAR to the Websites. The unsuspecting customers do not know that they have been diverted to Defendants' Websites and call center and thus engage with Defendants as if they are NETGEAR.

23. Defendants intentionally deceive customers by holding themselves out to be authorized representatives of NETGEAR.

24. Furthermore, Defendants have sold and are currently selling products bearing the NETGEAR Marks on the Websites.

25. NETGEAR has never authorized or otherwise granted Defendants permission to sell NETGEAR Products and services.

26. Defendants represent that the NETGEAR Products and services it offers for sale on the Websites are "genuine" despite the fact that they do not provide any NETGEAR Products and

services to customers after receiving payment. Instead, it is Defendants intent to con customers out of money by trading on the goodwill of the NETGEAR brand and NETGEAR Marks.

27. Defendants' advertisement of NETGEAR Products and use of the NETGEAR Marks provides customers with a false assurance that the products and services they purchase from Defendants are authentic and thus conform with NETGEAR's high standards and work as intended. However, after Defendants' convince customers that they are authorized NETGEAR agents and obtain credit card information, personal information, and payment, Defendants do not provide any products or services.

28. In addition to harm to consumers, the impersonation and "sale" of non-genuine NETGEAR Products and services directly harms NETGEAR. When consumers purchase NETGEAR Products and services from Defendants, they expect to receive the products and services that they purchased. Instead, their image of NETGEAR is diminished because they do not receive any products and services. Consumers are deceived and in turn believe that NETGEAR failed to provide them with the high-quality products and support that NETGEAR is known for. NETGEAR's opportunity to sell genuine, high-quality products to those consumers may be then lost forever. As a result of Defendants' conduct, NETGEAR suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.

29. For example, customers are deceived into purchasing "premium support contracts" from Defendants, which do not provide any actual NETGEAR services or support. On July 3, 2024, NETGEAR received the following customer complaint regarding Defendants:

> "Good morning – I strongly advise you revisit your policy and your verbiage … the fraudulent phone assistance did the exact same steps that your team does as well. So it makes it very difficult to know who to trust . . . When I called, I was transferred to technical assistance because my device was beyond my 90 days. From there, they did the exact same steps that your representatives did as well.

> Including giving a specialized phone number…I will be contacting the police on this and I will be reporting as fraud. Again, I strongly advise you revisit your procedures."

30. On June 18, 2024, a NETGEAR customer sent the following correspondence to NETGEAR:

> "NETGEAR – I wanted to alert you that I think this email below is part of a scam impersonating NETGEAR support . . . The group was offering technical support . . . They offered a couple of options covering both devises with security permissions for I think 2 years, 5 years, or lifetime. I believe the pricing was $199, $299, or $459 for those options. I selected lifetime and made a payment based off email from them . . . I finally got real concerned it was a scam and hung up. Reached out to my bank to cancel payment."

31. On April 5, 2024, another NETGEAR customer contacted NETGEAR and stated:

> "I cannot believe I fell for this scam. I have been trained against this and still fell prey."

32. On May 1, 2025, a NETGEAR customer stated:

> "I was on a net gear site (*sic*). The chatline came up, can I help you? And I said I was trying to activate my net gear (*sic*). Wif-Fi router extender, and she said. (sic) Let me get you an (*sic*) expert. He will call you shortly. So when the call came in, I answered it. I canceled my debit card . . ."

33. Defendants' unauthorized use of the NETGEAR Marks and advertisement and sale of NETGEAR products and services intentionally misrepresents to consumers that Defendants are NETGEAR agents and/or employees who are authorized to sell NETGEAR Products and services, when they are not.

34. Defendants' unauthorized use of the NETGEAR Marks and advertisement and sale of NETGEAR Products and services creates the false and/or misleading impression that Defendants are NETGEAR agents and/or employees or authorized to sell NETGEAR Products and services, which they are not. This is likely to cause (and has caused) consumer confusion and

disappointment when, for example, consumers purchase products and services from Defendants and learn that the products and service they have purchased from Defendants are not genuine and authentic NETGEAR products and services.

### C. The Likelihood of Confusion and Injury Caused by Defendants' Actions

35. Defendants actions of impersonating NETGEAR in order to sell non-genuine products and services bearing the NETGEAR Marks to unknowing NETGEAR customers harms NETGEAR.

36. Defendants' actions substantially harm NETGEAR by purposefully diverting customers looking for NETGEAR's website to their own.

37. Defendants' unauthorized actions have substantially harmed NETGEAR by misleading NETGEAR customers into sending substantial payments meant for NETGEAR to Defendants bank account rather than NETGEAR.

38. For example, on March 13, 2024, a NETGEAR customer complained of Defendants conduct, believing it was NETGEAR stating:

> "I will continue to escalate this erroneous blatant NETGEAR SCAM on social media, and other media outlets to expose the poor business activities by NETGEAR. I have filed a claim with my Financial Institution, CIA, FBI, BBB, India Government, and India Ministry of Communications. I have also reported NETGEAR to CNN, the IRS and all US Government agencies. As noted, I will continue to expose this business sloppy practice and make sure this impacts NETGEAR with future customers. I am in the process of transitioning out of NETGEAR, and I will NEVER purchase another NETGEAR item as long as I live."

39. As evidenced above, the harm to NETGEAR and its customers is not theoretical. Defendants conduct intentionally deceives customers. Defendants are impersonating NETGEAR and holding themselves out as authorized NETGEAR agents, when they are not.

40. Defendants' advertisement and sale of products and services bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion by representing to consumers that the NETGEAR Products and services offered by sale by Defendants are "authentic" and "genuine" when they are not.

41. Defendants' advertisement and sale of products and services bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion and disappointment regarding NETGEAR's sponsorship or approval of those products creating a false designation of origin in the minds of consumers.

42. Defendants' actions substantially harm NETGEAR's goodwill and reputation when consumers learn that the products and services bearing the NETGEAR Marks they have purchased from Defendants are not authentic and do not exist.

43. Defendants' conduct results in consumer confusion as well as the dilution of NETGEAR's goodwill and trade name as consumers are not receiving the products and services they believe they are purchasing.

44. Defendants' conduct as described herein results in the lessening of sales of genuine, properly advertised NETGEAR Products and services to the detriment of NETGEAR.

45. As a result of Defendants' actions NETGEAR is suffering a loss of the enormous goodwill it created in the NETGEAR Marks.

46. Defendants continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to NETGEAR's irreparable harm.

## COUNT I
**Trademark Infringement in Violation of 15 U.S.C. § 1114**

47. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

49. The acts of Defendant alleged herein constitute the use in commerce, without the consent of NETGEAR, of a reproduction, counterfeit, copy, or colorable imitation of the NETGEAR Mark in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe NETGEAR's rights in the NETGEAR Marks, all in violation of the Lanham Act.

50. Defendants' infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of such products, and constitute trademark infringement under 15 U.S.C. § 1114.

51. Defendants' use of the NETGEAR Marks in the advertisement or sale of NETGEAR Products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

52. As a direct and proximate result of Defendants' actions, NETGEAR has been, and continues to be, damaged by Defendants' activities and conduct.

53. Defendant has profited thereby, and, unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## **COUNT II**
**False Designation of Origin, Description, and Representation Under 15 U.S.C. S 1125(a)**

54. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

322273273.1

55. This is a claim for false designation of origin, false descriptions, and false representations under 15 U.S.C. § 1125(a).

56. NETGEAR engage in interstate activities designed to promote their goods and services sold, as well as the good will associated with the NETGEAR Marks, throughout the United States.

57. The NETGEAR Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing NETGEAR products.

58. By using the NETGEAR Marks and a confusingly similar trademark to impersonate NETGEAR and advertise and offer for sale NETGEAR's products under false pretenses, Defendants are engaging in unfair competition, false advertising, and/or falsely representing sponsorship by, affiliation with, or connection to NETGEAR and its goods and services in violation of 15 U.S.C. § 1125(a).

59. By advertising or promoting products using the NETGEAR Marks as alleged herein, Defendants are misrepresenting the nature, characteristics, and qualities of its goods in violation of 15 U.S.C. § 1125(a).

60. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

61. By offering to sell, selling, and advertising products under the NETGEAR Mark, as alleged herein, NETGEAR is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

62. As a direct and proximate result of Defendants' actions, NETGEAR has been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited

thereby, and unless its conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
### Unfair Competition Under G.L. c. 93A

63. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. NETGEAR and Defendants are in the conduct of trade or commerce within the meaning of G.L. c. 93A.

65. As detailed above, Defendants continued trademark infringement and impersonation of NETGEAR constitutes unfair and deceptive business practice.

66. Defendants' acts have irreparably harmed NETGEAR and, unless enjoined, will continue to do so in a manner affording NETGEAR no adequate remedy at law.

67. Defendant has refused to desist from these wrongful acts, and therefore Defendant has indicated that it intends to continue its unlawful conduct, unless restrained by this Court.

## COUNT IV
### Violations of California Business and Professions Code § 17200 et seq.

68. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69. The California Unfair Competition Law, codified at Business and Professions Code sections 17200, et seq., prohibits any unlawful, unfair, or fraudulent business act or practice.

70. Defendants' acts, omissions, misrepresentations, and/or practices constitute unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business & Professions Code §§ 17200, et seq.

71. Defendants' misconduct has a tendency and likelihood to deceive members of the public.

72. The foregoing acts and practices have caused substantial harm to NETGEAR.

73. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendant, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

74. Defendants' conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury. Defendants' conduct subjected NETGEAR to unjust hardship in conscious disregard of the Plaintiff's rights, such as to constitute malice, oppression, or fraud under California Civil Code § 3294, thereby entitling NETGEAR to an award of exemplary and punitive damages in an amount appropriate to punish or set an example of Defendant.

## COUNT V
## Violations of N.Y. General Business Law § 349

75. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76. N.Y. General Business Law § 349 prohibits any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

77. Defendants' acts, omissions, misrepresentations, and/or practices constitute deceptive acts or practices within the meaning of N.Y. General Business Law § 349.

78. Defendants' misconduct has a tendency and likelihood to deceive members of the public.

79. The foregoing acts and practices have caused substantial harm to NETGEAR.

80. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendant, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

81. Defendants' conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff NETGEAR, Inc. prays for judgment in its favor and against Defendants providing the following relief:

1. Finding that, (i) as to Count I, Defendants' unauthorized promotion and sale of NETGEAR products and services infringes on NETGEAR's registered trademark, in violation of 15 U.S.C. § 1114; (ii) as to Count II, Defendants' unauthorized promotion and sale of NETGEAR products and services constitutes a false designation of origin, description and representation in violation of 15 U.S.C. § 1125(a); and (iii) as to Count III, IV, and V, Defendants', Defendants' actions constitute a violation of Massachusetts, California and New York State law, resulting in Defendants, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendants, including but not limited to the Websites or any other website, website host, website administrator, domain registrar, or internet service provider, being preliminarily and permanently enjoined from:

a. Using or attempting to use, any of NETGEAR's intellectual property, including, but not limited to, the NETGEAR Marks or any other confusingly similar mark or domains.;

b. Advertising, selling, or taking any steps to sell, any products bearing the NETGEAR Marks in an improper manner;

c. Engaging in any activity constituting unfair competition with NETGEAR; and

d. Inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

2. Award NETGEAR its damages suffered as a result of Defendants' acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117, M.G.L. c. 93A, California Business and Professions Code § 17200 et seq., and/or N.Y. General Business Law § 349.

3. Award NETGEAR Defendants' profits as a result of Defendants' acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117, M.G.L. c. 93A, California Business and Professions Code § 17200 et seq, and N.Y. General Business Law § 349;

4. Award NETGEAR statutory damages of $2,000,000.00 per mark pursuant to 15 U.S.C. § 1117(c);

5. Award NETGEAR exemplary and punitive damages in an appropriate amount;

6. Enter judgment that Defendants' acts of infringement have been knowing and willful;

7. Award NETGEAR its reasonable attorneys' fees in bringing this action as allowed by law;

8. Award NETGEAR pre-judgment and post-judgment interest in the maximum amount allowed under the law;

9. Award NETGEAR the costs incurred in bringing this action; and

10. Award NETGEAR such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

NETGEAR hereby requests a trial by jury on all causes of action so triable.

Dated:   February 6, 2025

        Respectfully submitted,

*/s/ Shaina M. Lefkowitz*
Morgan T. Nickerson (BBO #667290)
morgan.nickerson@klgates.com
Shaina M. Lefkowitz (BBO #694338)
shaina.lefkowitz@klgates.com
K&L Gates LLP
One Congress Street
Suite 2900
Boston, MA 02114
(617) 261-3100
(617) 261-3175

*Attorneys for NETGEAR Inc.*