UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NETGEAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> NETGR ROUTER, WAVLINK SUPPORT, WIFIEXT LLC a/k/a MYWIFIEXTNET, MYWIFIEXT, and WIFI EXT, MYWIFINETWORK, WEB ENCHANTERS, NET GEAR, NETGENIE, WIFI SUPPORT, SECURITYUPDATE, EXTENDER SUPPORT, NETGENIEEXT, GEEKZ SOLUTIONS, ROUTER TECH, AND JOHN DOES 1-5, <br><br> Defendants. | Civil Action No. 1:24-cv-12071-IT |

**PLAINTIFF'S MOTION FOR DAMAGES IN SUPPORT OF ITS GRANTED MOTION FOR DEFAULT**

Pursuant to the Court's Judgment entered on June 27, 2025, Plaintiff NETGEAR, Inc. ("Plaintiff" or "NETGEAR") hereby submits this Motion in Support of its Granted Motion for Default as to Defendants NETGR Router ("NETGR"), Wavlink Support, WifiExt LLC a/k/a MyWifiExtNet, MyWifiExt, and WifiExt; MyWifiNetwork, Web Enchanters, Net Gear, NetGenie, Wifi Support, SecurityUpdate, Extender Support, NetGenieExt (collectively, "Defendants") for damages. In support of this request, NETGEAR incorporates its granted Motion for Default (ECF No. 24) and states as follows:

I. **INTRODUCTION & PROCEDURAL HISTORY**

This is a trademark infringement, false designation of origin, and unfair competition lawsuit involving NETGEAR's efforts to protect its brand and consumers from Defendants' illegal and nefarious activities. As explained in great detail within NETGEAR's pleadings, Defendant

operates the websites, including but not limited to, routersetupforyou.com, routeruniverse.com, routerhelps.com and routerappsetup.com (collectively, the "Websites") to deceive customers into believing they are authorized to sell NETGEAR products and offer NETGEAR services.  The Defendants go so far as to impersonate NETGEAR customer support agents using various email addresses. Defendants also use the NETGEAR Marks on their Websites in furtherance of their scheme to con unknowing customers.   Defendants divert customers looking for NETGEAR products and support services from NETGEAR to the Websites.  The unsuspecting customers do not know that they have been diverted to Defendants' Websites and call center and thus engage with Defendants as if they are NETGEAR. Defendants intentionally deceive customers by holding themselves out to be authorized representatives of NETGEAR.  Defendants represent that the NETGEAR Products and services they offer for sale on the Websites are "genuine" despite the fact that they do not provide any NETGEAR Products and services to customers after receiving payment.  Instead, it is Defendants' intent to con customers out of money by trading on the goodwill of the NETGEAR brand and NETGEAR Marks.

NETGEAR filed its complaint on August 12, 2024 (ECF No. 1) and amended the complaint on February 6, 2025 (ECF No. 9). NETGEAR filed a Motion for Alternative Service of Process on March 11, 2025.  *See* ECF No. 15.  This motion was granted on March 12, 2025 and allowed for Plaintiff to serve process on Defendants via e-mail at the e-mail addresses identified in its motion for alternative service. *See* ECF No. 16.  On March 13, 2025, true and accurate copies of the Complaint and Summons were served upon Defendants, as indicated by the Affidavit of Service filed with the Court.  *See* ECF No. 17.  Defendants were required to file a response to NETGEAR's Complaint on or before April 3, 2025.  Defendants did not answer or otherwise move with respect to the Complaint, and the time for Defendants to answer or otherwise move with

respect to the Complaint expired. Given Defendants' failure to appear in the case, the Clerk of the Court properly entered a Default on April 10, 2025. *See* ECF No. 20. Thereafter, NETGEAR filed its Motion for Default Judgment and Permanent Injunctive Relief (the "Motion for Default"). *See* ECF No. 24. On June 27, 2025, the Court entered Judgment and granted NETGEAR's Motion for Default. *See* ECF No. 26.

Pursuant to 15 U.S.C. § 1117, NETGEAR is entitled to recover from Defendant the gains, profits, and advantages that it has obtained as a result of its unlawful acts. Given the default, NETGEAR was not able to conduct discovery to determine Defendants' sales volume and ultimately Defendants' profits. As such, the Court granted NETGEAR's request to conduct post-judgement discovery via subpoena to determine the scope of Defendant's sales and actual damages. *See* ECF No. 26.

## II. NETGEAR IS ENTITLED TO DAMAGES FOR DEFENDANT'S UNLAWFUL ACTS

Pursuant to 15 U.S.C. § 1117, NETGEAR is entitled to recover from Defendants the gains, profits, and advantages that it has obtained as a result of its unlawful acts. A violation under section 1125(a) entitles a plaintiff to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). In assessing profits to be awarded, plaintiff need only prove defendant's total sales; it is a defendant's burden to prove all elements of cost of deduction. "This allocation of burden arises from the language of the Lanham Act itself: 'In assessing profits the plaintiff shall be required to prove the defendant's sales only; defendant must prove all elements of cost or deduction claimed.' 15 U.S.C. § 1117(a)." *Venture Tape Corp v. McGills Glass Warehouse,* 540 F. 3d 56, 64 (1st Cir. 2008) ("Here, Venture met its burden by introducing tax returns showing Venture's gross sales

over the relevant time period. McGills then had the burden of proving evidentiary documentation that some of those sales were unrelated to and unaided by McGills' illicit use of Venture's marks. The company produced no such evidence."). It is black letter law that in Lanham Act cases:

> "If the infringer provides no evidence from which the court can determine the amount of any cost deductions, there is no obligation to make an estimate, and `costs' need not form any part of the calculation of profits. The infringer's burden of proving deductible costs is not carried by records showing only a vague, undifferentiated category of 'overhead' or 'checks written.' When the burden is not carried, plaintiff is awarded all revenue for that year."

<u>McCarthy on Trademarks and Unfair Competition</u> § 30:66 (4th ed.) (footnotes 15 omitted).

The case of *Epson Am., Inc. v. Century21 Elecs.*, No. 216CV06877SVWFFM, 2017 WL 8159961 (C.D. Cal. June 22, 2017) is instructive.[1] There, like here, a defendant defaulted in a Lanham Act case and Epson was forced to conduct post-default judgment discovery via a subpoena to Amazon.com. *Id.* at *2. In awarding Epson the total revenue, the Court explained

> "Here, the Defendant decided not to defend the case; therefore, the Defendant cannot present evidence of any offsetting costs. Since it is the Defendant's burden to prove its costs and expenses related to its sale of the infringing product, the Defendant is not entitled to offset the Plaintiff's showing of gross revenues because it has failed to produce any evidence whatsoever of any costs or deductions. As a result, the Plaintiff is entitled to the Defendant's frill revenues of $3,281,562.11 as a measure of the Plaintiff's damages resulting from the Defendant's trademark infringement."

*Id.* at *3.

As acknowledged by this Court's judgment, there is no doubt that NETGEAR is entitled to Defendant's profits. *See* ECF No. 26. NETGEAR need only prove Defendants' sales. Pursuant to the Court's Judgment, NETGEAR conducted post-judgment discovery and served Paypal with a subpoena requesting Defendants' sales information. Paypal responded to the subpoena and provided an excel spreadsheet of Defendants' sales. Affi. Nickerson ¶ 14. According to Paypal,

---

[1] A copy of this caselaw is attached hereto as Exhibit B for the convenience of the Court.

Defendants total sales between January 1, 2020 to July 31, 2025 were **$863,630.89**. *Id.* ¶ 15; Exhibit A. The defendant identified in Paragraph 8 of the complaint: NETGR an entity who, upon information and belief, operates the websites routersetupforyou.com, routeruniverse.com, and routerappsetup.com, as well as the email addresses: support@netgrouter.support, humawebenterprises@gmail.com, parvejwebservices@gmail.com, karanwebenterprises@gmail.com, saunoowebservices@gmail.com, prateekwebenterprises@gmail.com, mahaveerwebservices@gmail.com, netgearwebworld@gmail.com, and deepalenterprisesweb@gmail.com sales totaled **$564,406.94**. Affi. Nickerson ¶ 16; Exhibit A. The defendants identified in Paragraph 9 of the complaint: Wavlink Support, WifiExt LLC a/k/a MyWifiExtNet, MyWifiExt, and WifiExt, MyWifiNetwork, Web Enchanters, Net Gear, NetGenie, Wifi Support, SecurityUpdate, Extender Support, NetGenieExt entities who, upon information and belief, operate in concert by utilizing the email addresses support@mywifiextension.net, netgenienetwork@outlook.com, support@mywifiextension.net, netgenienetwork@outlook.com, paidformywifiext@gmail.com, and mywifiextus@outlook.com and the websites my-wifi-extnet.us, mywifiexxtnet.us, mywifiextelp.net, mywifiextsetup.us, myeifiext-ext.net, and mywifiexte.xyz sales totaled **$299,223.95**. Affi. Nickerson ¶ 17; Exhibit A. There is nothing speculative about this information. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) (citing *Nestle Food Co. v. Miller*, 836 F.Supp. 69, 78 (D.R.I. 1993), for the "enduring rule that damages must be established by a reasonable certainty and may not be recovered if purely speculative"). The evidence clearly establishes the Defendants' combined sales were **$863,630.89**. Defendant NETGR sales totaled **$564,406.94** and Defendants Wavlink Support, WifiExt LLC a/k/a MyWifiExtNet, MyWifiExt, and WifiExt, MyWifiNetwork, Web Enchanters, Net Gear,

NetGenie, Wifi Support, SecurityUpdate, Extender Support, NetGenieExt sales totaled **$299,223.95**. NETGEAR is therefore entitled to all of Defendants' profits from the sale of NETGEAR products.

### III.    CONCLUSION

Wherefore, pursuant to 15 U.S.C. § 1117(a), NETGEAR is entitled to a total of **$863,630.89** in actual damages, **$564,406.94** from Defendant NETGR and **$299,223.95** from Defendants Wavlink Support, WifiExt LLC a/k/a MyWifiExtNet, MyWifiExt, and WifiExt, MyWifiNetwork, Web Enchanters, Net Gear, NetGenie, Wifi Support, SecurityUpdate, Extender Support, and NetGenieExt acting in concert, which represents Defendants' sales that it obtained as a result of its unlawful acts via the Websites. A proposed order is submitted herewith for the Court's consideration.

           Respectfully submitted,

           NETGEAR, Inc.

           By Its Attorney,

*/s/ Morgan T. Nickerson*
Morgan T. Nickerson, Bar No. 667290
morgan.nickerson@klgates.com

K&L GATES LLP
1 Congress Street
Suite 2900
Boston, Massachusetts  02114-2023
Telephone:   +1 617 261 3100
Facsimile:   +1 617 261 3175

Dated: August 13, 2025

- 7 -

## CERTIFICATE OF SERVICE

I, Morgan T. Nickerson, hereby certify that on August 13, 2025, I caused to be served a copy of the foregoing document via Defendants' email as permitted by the Court's Order granting NETGEAR's Motion for Alternative Service.

/s/ *Morgan T. Nickerson*
Morgan T. Nickerson